UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DAVID RAGLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:22-cv-1386 (IDD) |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the parties' cross-motions for summary judgment. Dkt. Nos. 15, 19. Pursuant to 42 U.S.C. § 405(g), David Ragland ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34, 1381-83. For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. No. 15) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. No. 19) is **GRANTED**.

### I. PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on November 12, 2019, alleging disability since June 1, 2018, due to idiopathic insomnia, cardiac bypass surgery, congestive heart failure, anxiety, depression, high blood pressure, and high cholesterol. Administrative Record ("R.") at 78-79. Plaintiff's initial claims were denied first on July 31, 2020, and again upon reconsideration on June 22, 2021. R. at 79-88, 91-99. A hearing before Administrate Law Judge ("ALJ") Elizabeth A.

1

Lardaro was conducted on January 13, 2022. R. at 35. At the hearing, Plaintiff, through his representative, amended his alleged onset date to February 16, 2019. R. at 43.

On February 11, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. at 16-30. On September 29, 2022, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. at 1. Having exhausted his administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on December 5, 2022. Dkt. No. 1. The parties filed cross-motions for summary judgment, and this matter is ripe for disposition.

## II.   STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a district court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue,* 667 F.3d 470, 472 (4th Cir. 2012) (alteration in original) (citation omitted). Substantial evidence is more than a mere scintilla and means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). Review is highly deferential, and the Court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). However, if the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the

decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Fourth Circuit applies a harmless error analysis to social security DIB determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). The harmless error doctrine applies when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 65, 67 (4th Cir. 2014) (per curiam)). A harmless error occurs when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When conducting a harmless error analysis, a court must estimate "the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

### III. DETERMINING DISABILITY AND THE ALJ'S DECISION

#### A. Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler*

*v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[1] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an impairment that prevents past relevant work;[2] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

When evaluating a claimant's asserted mental impairments, the ALJ is required to apply the "special technique" in 20 C.F.R. § 404.1520a. This technique requires the ALJ to "rate the degree of functional limitation resulting from [any medically determinable mental] impairment(s)" in "four broad functional areas…: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself" (hereinafter, the "B criteria"). 20 C.F.R. § 404.1520a(b)(2), (c)(3). Limitations in these areas are rated on a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). The ALJ then "determine[s] the severity of [the claimant's] mental impairments(s)." 20 C.F.R. § 404.1520a(d). Typically, impairments are found to be non-severe where limitations are rated "none" or "mild," "unless the evidence otherwise indicates that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." *Id.*

---

[1] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[2] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

## B.  The ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity during the period of October 2020 through March 2021. R. at 19. Plaintiff worked as an assistant professor from May through June 2019, but because this work activity ended within six months, the ALJ found it to be an unsuccessful work attempt. *Id.* Plaintiff returned to the position of an assistant professor in August 2020 and continued working through "at least the third quarter of 2021." *Id.* Based on Plaintiff's earning records, the ALJ determined that Plaintiff's work activity from October 2020 through March 2021 was substantial gainful activity. *Id.* Because this work activity lasted longer than six months, the ALJ found that it did not constitute an unsuccessful work attempt. *Id.* However, since the ALJ found that there "has been a continuous 12-month period(s) during which the [Plaintiff] did not engage in substantial gainful activity," the ALJ continued the decision to address the periods in which the Plaintiff did not engage in substantial gainful activity. *Id.*

At step two of the sequential evaluation ("Finding 4"), the ALJ found that Plaintiff has the following severe impairments: congestive heart failure, degenerative disc diseases of the cervical spine, hypertension, and hyperlipidemia. *Id.* The ALJ concluded that these impairments were severe because they significantly limit Plaintiff's ability to perform basic work activities, pursuant to SSR 85-28. *Id.*

Additionally, the ALJ found that Plaintiff's seborrheic keratosis, bursitis of the left elbow, and insomnia did not cause any limitation and that various treatment notes indicated that they have not and were not expected to last for a continuous period of twelve months, or that they were stable and controlled. *Id.* Because the ALJ found that these impairments did not significantly limit Plaintiff's ability to do basic work activities, she found them to be nonsevere. *Id.* at 20. However,

the ALJ stated that she considered all of Plaintiff's medically determinable impairments, including those that are not severe, when assessing Plaintiff's residual functional capacity ("RFC"). *Id.*

As to Plaintiff's insomnia, specifically, the ALJ noted that Plaintiff "complained of difficulty sleeping at times, but he nevertheless indicated that he generally got at least six to seven hours of sleep per night." *Id.* at 19. Citing to Plaintiff's treatment notes, the ALJ found that by March 2021, Plaintiff was consistently sleeping seven to eight hours with his current medication. *Id.* The ALJ cited to Plaintiff's statement that he was "completely functional and had accepted a teaching position." *Id.* at 20 (citing R. at 15). The ALJ went on to state that the Plaintiff "acknowledged he had experienced insomnia since childhood, and . . . note[d] his long work history despite this condition." *Id.*

The ALJ next turned to Plaintiff's diagnoses of depressive disorder, anxiety disorder, and mild cognitive delay. *Id.* The ALJ concluded that the severity of Plaintiff's medically determinable mental impairments, considered singly and in combination, did not cause more than a minimal limitation in his ability to perform "basic mental work activities and are therefore nonsevere." *Id.* The ALJ considered Ms. Simrit Kahlon's psychological consultative evaluation of Plaintiff in June 2021. *Id.* Ms. Kahlon, a PA-C, found that the "[m]ental status examination was remarkable for a slightly dysthymic and flat affect, though the claimant had adequate appearance and hygiene, cooperative behavior, normal eye contact, normal expressive and receptive languages, linear thought process, coherent speech, average language and comprehension, average fund of knowledge, average abstraction, average working memory skills, intact immediate and delayed recall, average attention and concentration, average insight, and normal judgment." *Id.* At the time of the June 2021 evaluation, Plaintiff "reported depression, anxiety, low frustration tolerance,

irritability, mood swings, distractibility, poor attention span, low energy, and passive suicidal ideations." *Id.*

After finding Plaintiff's medically determinable mental impairments to be nonsevere, the ALJ turned to the B criteria. *Id.* As to each of the four broad functional areas, the ALJ found Plaintiff to have no more than a mild limitation. *Id.* Because the ALJ found the evidence did not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ found Plaintiff's mental impairments to be nonsevere, pursuant to 20 C.F.R. § 404.1520a(d)(1). *Id.* at 21.

As to the first functional area—understanding, remembering, or applying information—the ALJ noted that Plaintiff "reported a decline in mental acuity with difficulty remembering things, understanding, following instructions, and completing tasks." *Id.* at 20. However, the ALJ went on to state that "there is no objective evidence of any limitation in this area of functioning, citing to the June 2021 mental examination. *Id.* The ALJ further supported this finding by noting that Plaintiff did not seek specific treatment for memory problems and that Plaintiff reported being able to drive, cook, grocery shop, manage finances, read, watch television, and work part-time as a professor, activities which the ALJ found to require the ability to understand, remember, and apply information. *Id.* at 20-21.

As to the second functional area—interacting with others—the ALJ noted that Plaintiff reported mood swings, irritability, and difficulty getting along with others. *Id.* at 21. However, the ALJ further stated that "there is no objective evidence of any limitation in this area of functioning." *Id.* In finding no more than a mild limitation in this area, the ALJ again referred to the June 2021 mental examination, where Ms. Kahlon found Plaintiff exhibited adequate appearance and hygiene, cooperative behavior, normal eye contact, and normal expressive and receptive

7

languages. *Id.* The ALJ also credited Plaintiff's reports that he grocery shopped, spent time with friends, and taught an online class to demonstrate his ability to interact with others and that he interacted appropriately with his healthcare providers and with the ALJ at the hearing. *Id.*

As to the third functional area—concentrating, persisting or maintaining pace—the ALJ noted Plaintiff's complaints of difficulty concentrating, focusing, and completing tasks and distractibility. *Id.* However, the ALJ stated that there was "no objective evidence of any limitation in this area of functioning." *Id.* To support this finding, the ALJ turned to the June 2021 psychological examination, in which Plaintiff exhibited linear thought processes and average attention and concentration, and further noted that Plaintiff never sought treatment for concentration issues. *Id.* Plaintiff also reported his ability to drive, cook, clean, grocery shop, manage finances, read, watch television, and work part-time as a professor, activities which the ALJ found to require concentration, persistence and pace. *Id.*

As to the fourth and final functional area—adapting or managing oneself—Plaintiff reported mood swings, low frustration tolerance, decreased patience, diminished coping skills, and difficulty handling stress and changes in routine. *Id.* However, the ALJ found that there was "little objective evidence of any limitation in this area of functioning." *Id.* Citing to the June 2021 psychological evaluation, the ALJ noted that the psychological examination demonstrated slightly dysthymic and flat affect and average insight and normal judgment. *Id.* Further, the ALJ credited Plaintiff's reported ability to do a wide range of activities of daily living as further support for her finding in this functional area. *Id.*

At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22.

In between steps three and four of the sequential evaluation, the ALJ determined Plaintiff's residual functional capacity ("RFC"). The ALJ concluded that Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff "must avoid concentrated exposure to extreme cold and extreme heat." R. at 24. In reaching this conclusion, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ first cited to Plaintiff's Function Reports. *Id.* In Plaintiff's first Function Report, dated March 29, 2020, Plaintiff identified the following concerns: heart attack; osteoarthritis; insomnia; fatigue; irritability; and difficulty squatting, bending, kneeling, reaching, sleeping, remembering things, concentrating, focusing, understanding, following instructions, getting along with others, and handling stress and changes in routine. *Id.* (citing Ex. 7E at 2-3, 8-10). In the March 29, 2020 Function Report, Plaintiff also reported that he was only able to pay attention for two to three minutes at a time, that he required reminders to take his medication, and that he was only able to walk for one hour before needing a rest for the day. *Id.* (citing Ex. 7E at 5, 8). Plaintiff, however, also reported he was able to care for his personal needs, drive, cook, clean, do laundry, grocery shop, manage money, do light workouts, spend time with friends, read, and watch television. *Id.* Plaintiff's wife, Ms. Sara Matamala, further supported Plaintiff's statements in the Third Party Adult Function Report, which she completed on March 29, 2020. *Id.* (citing Ex. 6E). In her report, Ms. Matamala wrote that Plaintiff experiences sleeping problems and previously suffered a "massive heart attack." *Id.* (citing Ex. 6E at 2, 3). Ms. Matamala further wrote that her husband has trouble with memory, concentration, completing tasks, and getting along with others due to his insomnia and consistent lack of sleep. *Id.* (citing Ex. 6E at 2, 7). Despite these problems, Ms. Matamala also reported that

Plaintiff is able to cook, clean, iron, read, watch television, and talk with family and friends on the phone. *Id.* (citing Ex. 6E at 4, 7).

Plaintiff completed a second Function Report on March 11, 2021, in which he identified the same concerns as in the March 29, 2020 Function Report. He also reported mood swings; low frustration tolerance; memory problems; and difficulty lifting, standing, walking, climbing stairs, and completing tasks. *Id.* at 24-25 (citing Ex. 15E at 1-2, 5-7). In the March 11, 2021 Function Report, Plaintiff reported being able to care for his personal needs, drive, prepare simple meals, clean, wash dishes, mulch, take out the trash, shop in stores and online, manage money, spend time with others, read, and watch television. *Id.* at 25 (citing 15E at 2-5).

Plaintiff suffered a heart attack on February 16, 2019. *Id.* Plaintiff then underwent bypass surgery and was placed in a five-day medically induced coma. *Id.* The ALJ noted Plaintiff's hearing testimony that after the surgery, Plaintiff "noticed a decline in his mental acuity." *Id.* Plaintiff also stated that in his position as an assistant professor, Plaintiff generally worked 35 to 40 hours per week, despite the university's estimate that the position only should require 10 to 12 hours of work each week. *Id.* Plaintiff also noted side effects of joint and muscle pain and brain fog from his medication. *Id.* Additionally, Plaintiff reported having chronic insomnia, which he said had recently improved. *Id.*

The ALJ ultimately concluded that the evidence "establishes some limitations in functioning but not to the degree alleged." *Id.* The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in record for the reasons explained in this decision." *Id.* at 26. In evaluating Plaintiff's alleged symptoms, the

10

ALJ turned to SSR 16-3p, which provides guidance for evaluating a claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms, and to 20 C.F.R. 404.1529(c)(3), which sets forth factors to be considered in evaluating a claimant's alleged symptoms. *Id.* The ALJ then stated that "[t]o the extent that [Plaintiff]'subjective complaints and hearing testimony are consistent with the evidence, they are reflected in the [RFC]." *Id.* As to the mental impairments, specifically, the ALJ again stated that "[f]or the reasons discussed under Finding 4, the undersigned concludes that insomnia, depression, and anxiety are nonsevere impairments." *Id.*

The ALJ then assessed medical opinions and prior administrative medical findings. *Id.* at 28. Ms. Kahlon, a psychological consultative examiner, opined that Plaintiff was moderately impaired in the following ways: ability to perform detailed and complex tasks, perform work activities on a consistent basis, complete a normal workday or workweek without interruptions from a psychiatric conditions, and handle the usual stress of competitive work. *Id.* (citing 11F at 4). Ms. Kahlon also found Plaintiff to be mildly impaired in his ability to perform work activities without additional supervision and in his ability to interact with coworkers and the public. *Id.* (citing 11F at 4). The ALJ did not find Ms. Kahlon's statement to be persuasive because the ALJ did not find Ms. Kahlon's "minimal examination findings" to support moderate mental limitations, and the ALJ found Ms. Kahlon's opinion not to be consistent with the overall record because the record "documents little mental health treatment" as well as Plaintiff's "ability to engage in many activities of daily living requiring mental and/or emotional acuity." *Id.* (citing 7E at 2-3, 5-7; 15E at 2-5; 6F at 6; 11F at 3; Hearing Recording).

The ALJ next assessed the opinions of the state agency psychological consultant, Nicole Sampson, Ph.D., which the ALJ found persuasive. *Id.* In an initial July 31, 2020 evaluation, Dr.

Sampson found that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* (citing 1A at 7). Subsequently, on June 10, 2021, Dr. Sampson concluded that Plaintiff had no limitation in understanding, remembering, and applying information and no limitation in interacting with others, but she still found that Plaintiff had mild limitations in the other two functional areas. *Id.* (citing 3A at 4-5). The ALJ found Dr. Sampson's opinion to be persuasive because Dr. Sampson supported her opinions by citing to relevant evidence in the record and because Dr. Sampson "properly assessed the persuasiveness of Ms. Kahlon's opinion." *Id.* The ALJ also found Dr. Sampson's opinions to be "consistent with the evidence as a whole, which reflects little mental health treatment and [Plaintiff]'s ability to engage in many activities of daily living requiring mental and/or emotional acuity." *Id.* (citing 7E at 2-3, 5-7; 15E at 2-5; 6F at 6; 11F at 3; Hearing Recording). Finally, the state agency medical consultants, David Bristow, M.D., and Bert Spetzler, M.D., opined that Plaintiff could perform light work, except that Dr. Spetzler opined that Plaintiff should avoid concentrated exposure to extreme cold and extreme heat. *Id.* (citing Ex. 1A at 8-9, 3A at 6-7). The ALJ found Dr. Bristow and Dr. Spetzler's opinions to be persuasive because they cited to relevant evidence to support their opinions, and the ALJ found their opinions to be consistent with the totality of medical evidence, which "documents significant improvement and [Plaintiff's] ability to engage in many activities of daily living requiring physical exertion. *Id.*

Ultimately, the ALJ concluded that Plaintiff is capable of performing light work with avoidance of concentrated exposure to extreme cold and extreme heat. *Id.* at 27. The ALJ found the RFC assessment to be "supported by the objective medical evidence and other evidence in the record." *Id.* at 28. Additionally, the ALJ stated that "while [Plaintiff's] subjective complaints are

not entirely consistent with the other evidence in the record, the [ALJ] has accounted for his symptoms in assessing his [RFC]." *Id.*

At step four of the sequential evaluation, the ALJ found that Plaintiff could perform past relevant work as a vice president and manager, data processing, because the ALJ found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. R. at 29. The ALJ agreed with the vocational expert who opined that an individual of Plaintiff's age, education, work experience, and RFC would be capable of performing any of Plaintiff's past relevant work as it is generally performed in the national economy. *Id.*

The ALJ did not reach step five of the analysis, instead concluding that from February 16, 2019 to the date of the ALJ's decision, Plaintiff was not under a disability as defined in the Social Security Act. R. at 30.

### IV.     ANALYSIS

#### A.     Cross-Motions for Summary Judgment

Plaintiff moves for summary judgment based on one alleged error in the ALJ's decision: that the ALJ did not reasonably find that Plaintiff's mental impairments, even as she found them, have no impact on his ability to perform his past highly skilled job. Pl.'s Br. in Supp. of Mot. for Summ. J. (hereinafter "Pl.'s Br."). *Id.* Defendant seeks summary judgment on the grounds that substantial evidence supports the ALJ's decision, including the resultant RFC and that the ALJ fully considered the record evidence, including Plaintiff's subjective complaints, to find that Plaintiff's non-severe mental impairments cause no work-related functional limitations. Mem. in Supp. of Def.'s Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ J. (hereinafter, "Def.'s Br."). For the reasons set forth below, the undersigned finds that the ALJ properly applied the correct legal standard and that the ALJ's decision is supported by substantial evidence.

1.  **The ALJ is Not Required to Explicitly Consider Plaintiff's Mild Limitations in the RFC and Substantial Evidence Supports the ALJ's RFC Assessment.**

Plaintiff's primary argument on appeal is that the ALJ erred by entirely omitting his mental impairments from the RFC. Pl.'s Br. at 3. The ALJ found that Plaintiff's mental impairments caused no more than mild limitations in each of the paragraph B functional areas. R. at 21. Plaintiff does not challenge the ALJ's finding no more than mild limitations in each of the functional areas, but rather asserts that it was error for the ALJ to not include Plaintiff's mild limitations in the RFC and that the ALJ did not reasonably find that Plaintiff's mild limitations have no ability to perform his past highly skilled job.

Plaintiff cites to *Shank v. Saul*, No. 3:20-cv-444, 2021 U.S. Dist. LEXIS 123081, at *25-26 (S.D.W. Va. June 11, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 123418 (S.D.W. Va. July 1, 2021), for the proposition that it was error for the ALJ to exclude Plaintiff's mental impairments from the RFC analysis when the ALJ found that the mental impairments cause no more than mild limitations. Pl.'s Br. at 8-9. In *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), to which Plaintiff also cites, the Fourth Circuit held that the ALJ committed an error by not considering the claimant's mental impairment, which the ALJ found caused moderate limitations in one of the B criteria. However, this Court and other courts in this circuit that have considered this questions have declined to extend the *Mascio* holding to cases where the mental impairments cause no more than mild limitations. *See, e.g.*, *Smith v. Berryhill*, 2018 U.S. Dist. LEXIs 119157, at *10-11 (W.D.N.C. July 17, 2018); *Stephanie A. v. Kijakazi*, 2023 U.S. Dist. LEXIS 139538, at 17-18 (Va. E.D. July 24, 2023), *report and recommendation adopted by Stephanie A. v. Kijakazi*, 2023 U.S. Dist. LEXIS 138887 (E.D. Va., Aug. 9, 2023); *Younger v. Berryhill*, 2019 U.S. Dist. LEXIS 126935 at 13-14 (E.D. Va. June 21, 2019) *report and recommendation adopted by Younger v. Berryhill*, 2019 U.S. Dist. LEXIS 126956 (E.D. Va., July

29, 2019); *Camille B. v. Kijakazi*, 2021 U.S. Dist. LEXIS 176667 at 13-14 (E.D. Va. Sept 15, 2021); *Kimberly G. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 255364, at 31-33 (E.D. Va. Dec. 7, 2021) *report and recommendation adopted by*, *Kimberly G. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 53800 (E.D. Va., Mar. 24, 2022); *Hardy v. Berryhill*, 2018 WL 1385412, 15-17 (WDNC March 19, 2018).

Plaintiff asserts that because his prior job was highly skilled, his case is distinguishable from the other cases declining to extend the *Mascio* holding to mild limitations, however, Plaintiff does not cite to any authority in support of this proposition. *See* Pl.'s Br. at 8-9. Accordingly, the undersigned declines to extend the *Mascio* holding to mild limitations and finds that it would be more appropriate that the question of whether to extend Mascio, in the context of skilled work or all types of work, would be more appropriately addressed by the Fourth Circuit in the first instance. *See Younger*, 2019 U.S. Dist. LEXIS 126935 at *13-14 ("[s]hould a finding of mild limitations require explanation by an ALJ, it is for the Fourth Circuit to so state.").

Plaintiff next argues that the ALJ's analysis is contrary to the Fourth Circuit's decision in *Dowling v. Comm'r of SSA*, 986 F.3d 377 (4th Cir. 2021). In *Dowling*, the Fourth Circuit remanded the case, finding that the ALJ's reliance on an incorrect regulatory framework led to a flawed RFC determination. *Dowling*, 986 F.3d 377 at 387. The Fourth Circuit found that the ALJ in *Dowling* committed error in determining the RFC by failing to cite to § 404.1545 and SSR 96-8p, other than once in the boilerplate section of the decision prior to the RFC analysis. *Id.* The Fourth Circuit noted that the ALJ failed to make clear that the RFC assessment was rooted in a function-by-function analysis and that an RFC assessment is a distinct inquiry from symptom evaluation. *Id.* Plaintiff asserts that this is what occurred here, and that, therefore, this case also should be remanded. Pl.'s Br. at 10.

15

Though Plaintiff asserts that the ALJ only cited to § 404.1545 and SSR 96-8p in the boilerplate section of her decision, it is evident that the ALJ did properly cite to, consider, and apply the appropriate regulatory framework in making the RFC determination. *See* R. at 18, 24-28. Unlike in *Dowling*, the ALJ properly applied the two-step test for symptom evaluation in evaluating Plaintiff's subjective complaints, finding that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the claimant's statements regarding the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence of record. R. at 26. In determining Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints, the findings of the state agency psychologist that Plaintiff's nonsevere mental impairments did not cause work-related function limitations, Plaintiff's lack of mental health treatment, reported improvements of Plaintiff's insomnia with medication, generally normal mental status examinations, and Plaintiff's daily activities, including Plaintiff's employment as a professor. R. 24-28. Accordingly, the ALJ in this matter went beyond what the ALJ did in *Dowling* and did not treat the symptom evaluation and RFC assessment as one and the same. *See id.* The ALJ properly applied the appropriate regulatory framework to the medical evidence and other evidence of record to conduct the function-by-function analysis and determine Plaintiff's RFC, which this Court finds to be supported by substantial evidence. It is not the role of this Court to re-weigh the evidence, and this Court must uphold an ALJ's decision when it has applied the correct regulatory framework and the decision is supported by substantial evidence. *See Hancock,* 667 F.3d 470 at 472; *Barnhart*, 434 F.3d at 653.

Finally, Plaintiff argues that his self-described limitations are consistent with the evidence of record and that, if properly credited, demonstrate that he is disabled, and that the ALJ "did not

16

reasonably or logically find to the contrary." Pl.'s Br. at 13. When evaluating a claimant's symptoms, the ALJ must apply the two-step evaluation process set forth in 20 C.F.R. §§ 404.1529, 416.929. *See Arakas* v. *Comm'r of Soc. Sec.*, 983 F.3d 83, 95 (4th Cir. 2020). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. *Id*. (citing to 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine their effect on claimant's ability to work and whether the claimant is disabled. *Arakas*, 983 F.3d at 95. The ALJ considers all available evidence, including medical history, medical signs and laboratory findings, and claimant's statements. 20 C.F.R. § 404.1529(a). At this step, "objective evidence is *not* required to find the claimant disabled," however, the ALJ may consider lack of objective medical evidence as one factor. *Arakas*, 983 F.3d at 95. (emphasis in original). The ALJ "must consider the entire case record and may 'not disregard an individual's statement about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." *Id.*

In support of his position, Plaintiff cites to *Shelly C. v. Comm'r of Soc. Sec.*, 61 F. 4th 341 (4th Cir. 2023), in which, the Fourth Circuit held that "[B]ecause of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence substantiating the claimant's impairment." *Shelly C.*, 61 F.4th at 361-62 (citing *Arakas*, 983 F.3d at 97-98). In *Arakas*, the Fourth Circuit held that a claimant with an impairment or impairments that do not produce objective indicators, the claimant is "entitled to rely exclusively on subjective evidence to prove" the severity, intensity, and persistence of his symptoms. *Id.* at 96. However, this does not mean that the ALJ is required to take Plaintiff's subjective complaints at face value, and the

17

ALJ is still entitled to consider the entire record as a whole. *See id.* at 96-97. In *Arakas*, the Fourth Circuit primarily took issue with the ALJ's analysis because it "effectively required" objective evidence, which is not the case here. *See id.*

In the present case, the ALJ properly conducted the two-step evaluation and found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the claimant's statements regarding the intensity, persistence, and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence of record. R. at 26. In reaching this conclusion, the ALJ articulated her reasoning and cited to substantial evidence in the record to support this finding, including prior statements from Plaintiff. R. at 20-21, 24-28. Such substantial evidence included that Plaintiff sought little mental health treatment and had generally normal mental status examinations. R. at 21, 28. The ALJ also noted that Plaintiff reported suffering from insomnia since childhood, but that since then, he had graduated college, obtained doctorate and master's degrees, and worked as a senior vice president and consultant. R. at 20-21. Further, Plaintiff, himself, reported that his insomnia had improved after he sought treatment and that he consistently sleeps seven to eight hours nightly under his current medication. R. at 19. Plaintiff said that he was "completely functional" with medication and proper sleep. R. at 19-20 (citing Ex. 14F at 15). By September 2020, Plaintiff and his wife reported that Plaintiff did not exhibit any cognitive decline, and, by March 2021, Plaintiff elected to accept a position as a professor. R. at 19-20. The ALJ also noted Plaintiff's self-reported daily activities, which required mental acuity, including his work as a university professor. R. at 18-20. The ALJ explicitly considered Plaintiff's subjective reports of brain fog, irritability, and difficulty concentrating and dealing with stress, but the ALJ did not find them to be consistent with the record as a whole, specifically Plaintiff's own statements to medical providers. R. at 20-21, 24-28.

There is no error in the ALJ relying on contradictory statements to determine that Plaintiff's subjective complaints were not entirely consistent with the evidence of record. *See* 20 C.F.R. § 404.1529(c)(4). Accordingly, the ALJ reasonably concluded that Plaintiff's self-described limitations were not consistent with the record evidence as whole, and this finding was sufficiently articulated and supported by substantial evidence. Where the ALJ has applied the correct regulatory framework and the decision is supported by substantial evidence, the decision must be upheld, and it is not the role of this Court to undertake to re-weigh that evidence. *See Hancock,* 667 F.3d 470 at 472; *Barnhart*, 434 F.3d at 653.

In sum, the undersigned finds that the ALJ sufficiently articulated her reasoning in her decision and that the decision as a whole was supported by substantial evidence. Therefore, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. No. 15) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. No. 19) is **GRANTED**. It is further

**ORDERED** that the decision of the Commissioner is hereby **AFFIRMED**, and this case is now **CLOSED.**

                                                               /s/
                                              Ivan D. Davis
                                              United States Magistrate Judge

October 4, 2024
Alexandria, Virginia